# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 26-921M(NJ) |
| Jermaine Erving | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___June 2025 - present___ in the county of ___Milwaukee___ in the ___Eastern___ District of ___Wisconsin___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 924(c), and 2(a); Title 21, United States Code, Sections 841(a)(1), 846 | Possession of Firearms in Furtherance of Drug Trafficking; Possession with Intent to Distribute and Distribution of Controlled Substances; Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

JEREMY S DORN  Digitally signed by JEREMY S DORN
Date: 2026.04.22 09:01:20 -05'00'

*Complainant's signature*

Jeremy Dorn, SA HSI

*Printed name and title*

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date: 4/22/2026

*Judge's signature*

City and state:          Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Jeremy Dorn, Special Agent with the Homeland Security Investigations (HSI), being duly sworn, depose and state:

1. There is probable cause to issue a criminal complaint against Jermaine ERVING (DOB: XX/XX/1976) for violations of federal law, including conspiracy to possess with intent distribute controlled substances, possession with intent to distribute controlled substances, and possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c), and 21 U.S.C. §§ 841(a)(1), 846 (collectively, the "SUBJECT OFFENSES")

## I. Introduction and Background

2. I am a Special Agent of Homeland Security Investigations/ U.S. Immigration and Customs Enforcement (HSI/ICE), assigned to the Resident Agent in Charge (RAC) Milwaukee, Wisconsin. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been a federal law enforcement agent for over ten years.

3. I have received basic criminal investigative training, including thirty-six weeks at the Federal Law Enforcement Training Center (FLETC). In the course of my work, I have become knowledgeable with the enforcement of federal narcotics laws. I am currently a member of the Homeland Security Task Force as an investigator specializing in the smuggling, trafficking, and

distribution of dangerous and controlled substances. I have participated in drug trafficking investigations conducted by HSI/ICE, the Drug Enforcement Administration (DEA), Federal Bureau of Investigation (FBI), the United States Postal Service (USPS) and other law enforcement agencies, which resulted in the arrest of subjects, and the seizure of property, assets, and controlled substances. As a narcotics investigator, I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover operations, court-ordered wiretaps, analysis of phone and financial records, and the arrests of numerous drug traffickers. I am familiar with various methods of smuggling and trafficking narcotics and other controlled substances and the proceeds from sale of such substances. I am also familiar with methods used to evade detection of both the controlled substances and the proceeds from their sale that are used by drug traffickers.

4. I investigate criminal violations of the Federal laws, including, but not limited to Title 18, United States Code, Sections 1956 and 1957 and Title 21, United States Code, Sections 841, 843, 846, 848, 952, and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances. I have participated in the execution of multiple federal search warrants.

5. By virtue of my employment as a federal agent and prior experience, I have knowledge of and/or performed various tasks, which include, but are not limited to:

a. I have functioned as both a case agent and co-case agent in numerous investigations into drug trafficking conspiracies, firearm offenses, and human trafficking.

b. I have interviewed witnesses, confidential human sources (CS) and sources of information (SOI) regarding drug trafficking and the distribution of monies and assets derived from drug trafficking (laundering of monetary instruments).

c. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States.

d. I have also relied upon informants to obtain controlled substances from dealers.

e. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized.

f. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, fentanyl, cocaine, cocaine base, ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of various controlled substances.

g. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded.

h. I know that drug traffickers often use electronic equipment and cellular telephones to conduct drug trafficking operations.

i.      I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such.

j.      I know that drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate drug trafficking.

k.      I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets to avoid scrutiny from law enforcement.

l.      I know that people engaged in the illegal possession or distribution of firearms often use electronic equipment and cellular telephones to conduct firearm trafficking operations.

6.      I am currently participating in an investigation of the MCDADE Drug Trafficking Organization (DTO), its members and associates, and one of the drug sources, Jermaine ERVING. I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) recorded jail calls which, prior to the parties' discussion, provided a warning that the calls would be recorded; (c) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers; (d) information obtained from witnesses, including confidential sources and undercover agents; (e) administratively subpoenaed and court ordered records; and (f) court authorized wire and electronic intercepts.

7.      This affidavit is made in support of an application for a criminal complaint for the SUBJECT OFFENSES.

8. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have included only information sufficient to demonstrate that there is sufficient probable cause for the requested criminal complaint and have not included each and every fact known to me concerning this investigation.

## II. FACTS SUPPORTING PROBABLE CAUSE

### A. Summary

9. Case agents have identified Jermaine ERVING as a large-scale drug trafficker and one of the drug sources to a drug trafficking organization connected to Russell MCDADE (the MCDADE DTO). Further, case agents have identified 6318 S. Aberdeen Street, Chicago, Illinois (the "subject premises") as ERVING's primary residence and a location from which he engages in drug trafficking.

10. During the investigation of the MCDADE DTO, case agents identified ERVING as a suspected source of supply for the DTO beginning in at least June 2025 and continuing as a suspected source of supply for the DTO to the present. As further detailed below, ERVING was identified as a suspected source of supply through electronic surveillance, review of telephone records, pole camera/video surveillance of ERVING's primary residence, physical surveillance, review of department of transportation records, and recorded jail calls, among other evidence. As further

detailed below, your affiant bases this belief on my training, experience and the investigation to date.

11. On multiple occasions during this investigation, case agents have observed ERVING engaging in suspected drug transactions, including both kilogram-level transactions and hand-to-hand suspected drug transactions outside of the **Subject Premises**. For example on February 15, 2026, video surveillance captured ERVING and another unidentified individual engaged in a suspected drug transaction during which the individual is captured on video surveillance holding what appears to be two bricks of cocaine in his hand before entering a red Chevrolet Caprice. Additionally, on March 1, 2026, case agents observed ERVING personally engage in hand-to-hand transactions, consistent with drug trafficking at the Subject Premises.

12. On March 4, 2026, ERVING was observed entering the **Subject Premises**. At approximately 5:16 p.m., an unknown black female exited a SUV and walked towards the **Subject Premises**. ERVING met with the black female and handed the female something. The black female then returned to the SUV, which then drove from the area. ERVING then returned to the **Subject Premises**. Based on my training, experience, and investigation, this short, quick hand to hand transaction between ERVING and the female is consistent with a drug transaction.

13. Also on March 4, 2026, at approximately 6:06 p.m., ERVING exited the **Subject Premises** and departed in his Toyota Camry. ERVING subsequently returned home to the **Subject Premises**, carrying a white object. A dark colored SUV

arrived and parked near the **Subject Premises**. A heavy-set black male exited the passenger side of the vehicle and walked towards the residence. Approximately a minute later, the heavyset black male returned to the SUV and the SUV departed the area. Based on my training, experience, and investigation, and short contact by the heavyset black male, I believe ERVING returned to the **Subject Premises** with controlled substances and the heavyset male obtained the controlled substances from ERVING.

14. On April 21, 2026, Magistrate Judge Daniel P. McLaughlin of the Northern District of Illinois granted a search warrant to search the **Subject Premises** for records related to violations of the controlled substance laws, including Title 21, U.S.C. § 841(a)(1) and 846.

15. On April 22, 2026, law enforcement executed the above-referenced search warrant at the **Subject Premises**. While clearing the residence, law enforcement located ERVING, and recovered controlled substances believed to be heroin, fentanyl, indicators of drug trafficking, and two semi-automatic firearms.

B. **Background of Investigation**

16. Since May 2024, HSI has been investigating allegations that members of the MCDADE DTO, including Russell MCDADE and Samuel STAIR, are conspiring with each other, and other individuals yet unknown, to operate stash houses and trap houses for the purpose of storing and distributing controlled substances in Milwaukee, Wisconsin, and using numerous properties owned by Samuel STAIR to engage in their conduct. During the investigation, Jermaine

ERVING, who lives at the **Subject Premises**, was identified as one of the sources of supply of cocaine to the MCDADE DTO, as further set forth below.

17. STAIR is the owner and operator of S2 Real Estate as well as at least 43 Limited Liability Companies in similar names. STAIR, though his LLCs, owns more than 100 rental properties throughout the greater Milwaukee area. As part of the investigation into the MCDADE DTO, case agents have determined that STAIR and one of his employees, LOPEZ, knowingly rent properties to drug traffickers for the purpose of storing and/or selling controlled substances. Case agents have identified several properties owned by STAIR, which have operated as trap houses or been otherwise involved in the distribution and storage of controlled substances in Milwaukee. Case agents have connected MCDADE to several of these trap houses.

18. As part of the investigation into MCDADE, case agents obtained several warrants authorizing agents to collect data pertaining to the locations of telephones used by MCDADE, i.e., (414) 514-3794 and (414) 439-7468. Case agents subsequently reviewed data between June 6, 2025, and June 14, 2025. Data pertaining to the locations of (414) 514-3794 and (414) 439-7468 revealed that MCDADE's telephones traveled from Milwaukee, Wisconsin to the Chicago area five times in the span of nine days. Case agents observed telephones (414) 514-3794 and (414) 439-7468 remained in the Chicago area for a short period of time before returning to Wisconsin.

19. On June 6, 2025, June 9, 2025, and June 11, 2025, the cell phone locations show that these two phones traveled from Milwaukee, WI, to the south side

of Chicago, IL, specifically to the area of W. 63rd Street and S. Halstead Street in Chicago.

20.     Case agents reviewed court-authorized cellular telephone records and location data for each of the dates MCDADE traveled to W. 63rd Street and S. Halstead Street in Chicago and MCDADE.  Case agents observed that one of the phone numbers MCDADE was in contact with on June 11, 2025, was (773) 981-6881.  Case agents know 773 is an area code that serves the Chicagoland area.  A search of law enforcement databases (Accurint and TLO) revealed that (773) 981-6881 listed to Jermaine A. ERVING (DOB: XX/XX/1976) of 6318 S. Aberdeen Street, Chicago, IL. (i.e., **Subject Premises**).  In addition, a query of CashApp revealed (773) 981-6881 was affiliated with username of "Jermaine."  Case agents are aware 6318 S. Aberdeen Street is in the immediate area near where MCDADE's two cellular telephones, (414) 514-3794 and (414) 439-7468), were located each time MCDADE traveled to Chicago.

21.     Case agents are also aware MCDADE's cellular telephones, (414) 514-3794 and (414) 439-7468, traveled along the Illinois Tollway.  Case agents compared the locations of the cell phones (414) 514-3794 and (414) 439-7468 information to an Illinois Tollway map and identified a cell location record showing the phones (414) 514-3794 and (414) 439-7468 passing Toll Plaza 21 on June 6, 2025, June 9, 2025, and June 11, 2025. Case agents contacted an employee with the IL Tollway who ran a license plate query from the toll cameras for the vehicles associated with MCDADE during that time. On June 9, 2025, when the cell phone location shows that MCDADE's phones were passing through Toll Plaza 21, the toll cameras captured

Wisconsin license plate AZY-8870 crossing the toll station.  Case agents reviewed Wisconsin Department of Transportation (WIDOT) records and observed the license plate was registered to Max Berzowski DOB: XX/XX/1971 with no vehicle associated with the plate.

22.    Case agents are aware through previous surveillance that the vehicle bearing Wisconsin license plate AZY-8870 was linked to MCDADE and MCDADE had been observed as a passenger in this vehicle bearing Wisconsin license plate AZY-8870 on previous occasions. Like on May 27, 2025, case agents observed MCDADE exit 1425 W. Greenfield Avenue and enter the driver's seat of AZY-8870.  Case agents are aware MCDADE uses vehicles registered in other persons names to avoid detection from law enforcement while procuring and/or distributing controlled substances.

23.    On June 6, 2025, at approximately 12:14 a.m., MCDADE's telephones (414) 514-3794 and (414) 439-7468 appeared to depart near Lake Forest, IL.  At approximately 12:59 a.m. MCDADE's telephones (414) 514-3794 and (414) 439-7468 were both in the area of the Englewood Neighborhood near W. 63rd Street and S. Carpenter Street, Chicago, IL. At approximately 1:29 a.m., the telephones (414) 5143794 and (414) 439-7468 appeared to head towards Milwaukee, WI from the Englewood Neighborhood and arrived in the area of Milwaukee around 3:00 a.m. Based on the investigation into MCDADE, case agents believe the trip began in Milwaukee, WI, similar to subsequent trips listed below; however, data from court authorized electronic surveillance did not have information as to the locations of

telephone numbers (414) 514-3794 and (414) 439-7468 prior to the departure at 12:14 a.m. from Lake Forest, Illinois.

24. On June 9, 2025, on his route back from Chicago to Milwaukee, MCDADE's cellular telephones (414) 514-3794 and (414) 439-7468 and a vehicle with Wisconsin license plate AZY-8870 passed through the tollway at Plaza 21 at the same time. Additionally, law enforcement databases show the vehicle with Wisconsin license plate AZY-8870 located in the area of I-90 Expressway and W. 59th Street on June 8, 2025, at 11:36 p.m. which corresponds with the location of MCDADE's cellular telephones (414) 514-3794 and (414) 439-7468 at that time.

25. Case agents reviewed court authorized electronic surveillance for telephone numbers for MCDADE's cellular telephone numbers (414) 514-3794 and (414) 439-7468 on June 8, 2025, at approximately 9:00 p.m. departed the Milwaukee, Wisconsin area. At approximately 11:10 p.m., MCDADE's telephones arrived at the area of Englewood Neighborhood near W. 63rd Street and S. Carpenter Street, Chicago, IL. At approximately 11:40 p.m., both telephones left the area of the Englewood Neighborhood near W. 63rd Street and S. Carpenter Street, Chicago, IL. Then on June 9, 2025, at approximately 2:00 a.m., MCDADE's telephones returned to the Milwaukee, Wisconsin area.

26. Case agents reviewed recorded jail calls for inmate pin # for Amber L. Valadez to MCDADE's number of (414) 514-3794 placed on June 9, 2025, at approximately, 8:01 a.m. (38811067_553878_06-09-2025_08-01-25_1-(414) 5143794_4901). Detective Sharif Said reviewed this call and recognized the voice of

the male who answered the phone as MCDADE. During this call, approximately 1 minute and 26 seconds into the recording, MCDADE stated that he was in Chicago, IL and he was busy. Case agents believe this was a reference to MCDADE traveling to Chicago, IL the night of Jun 8, 2025, and returning during the early morning hours of June 9, 2025.

27. On June 11, 2025, at approximately 2:00 a.m., MCDADE's telephones (414) 514-3794 and (414) 439-7468 departed the Milwaukee, WI area. At approximately 3:35 a.m., the telephones appeared to have arrived at the area of Englewood Neighborhood near W. 63rd Street and S. Carpenter Street, Chicago, IL. At approximately 4:05 a.m., both telephones (414) 514-3794 and (414) 439-7468 left the area of the Englewood Neighborhood near W. 63rd Street and S. Carpenter Street, Chicago, IL. On June 11, 2025, at approximately 6:00 a.m., MCDADE's telephones (414) 514-3794 and (414) 439-7468 returned to Milwaukee, Wisconsin.

28. Also on June 11, 2025, at approximately 6:10 a.m., case agents conducted surveillance and captured on video a Chevy Trax with Wisconsin license plate AVU-4071. Case agents reviewed WI DOT records and observed the vehicle was registered to Megan Morgan, DOB: 02/01/1986 on a silver 2020 Chevy Trax. The vehicle was parked directly in front of 1425 W. Greenfield Avenue, Milwaukee, WI, the same location where MCDADE conducted controlled drug buy with CHS #1 on May 20, 2025. Case agents observed a black male and a white female exit the front of 1425 W. Greenfield Avenue and enter the Chevrolet Trax. Case agents then reviewed plate readers in the Chicago, IL area and determined that the Trax was

captured by photograph on June 11, 2025, at 3:56 a.m. by plate readers on the Dan Ryan Expressway at 59th Street in Chicago, IL. This was also consistent with location data which revealed at that time that MCDADE's telephones (414) 514-3794 and (414) 439-7468 were in the area of the Dan Ryan Expressway at 63rd Street at 3:50 a.m. and 3:51 a.m., respectively.

29. Also on June 11, 2025, while conducting surveillance at 1425 W. Greenfield Avenue, Milwaukee, WI, case agents observed individuals entering and leaving the address, and entering the aforementioned black Minivan, bearing Wisconsin license plate AZY-8870, as previously noted is registered to Berzowski.

30. On June 13, 2025, at approximately 12:42 p.m., MCDADE's telephones departed the Milwaukee, WI area. At approximately 3:22 p.m., the telephones arrived at the area of Englewood Neighborhood near W. 63rd Street and S. Carpenter Street, Chicago, IL. At approximately 5:29 p.m., both telephones left the area of the Englewood Neighborhood near W. 63rd Street and S. Carpenter Street, Chicago, IL.

31. On June 13, 2025, at approximately 9:41 p.m., both of MCDADE's telephones, (414) 514-3794 and (414) 439-7468, returned to Milwaukee, WI.

32. On June 14, 2025, at approximately 8:13 p.m., MCDADE's telephones (414) 514-3794 and (414) 439-7468 departed Milwaukee, WI. At approximately 9:29 p.m., the telephones arrived in area of Englewood Neighborhood near W. 63rd Street and S. Carpenter Street, Chicago, IL. At approximately 10:14 p.m., MCDADE's telephones, (414) 514-3794 and (414) 439-7468, left the area of Englewood

Neighborhood near W. 63rd Street and S. Carpenter Street, Chicago IL and returned to the Milwaukee, WI area at approximately 12:18 a.m. on June 15, 2025.

33.     Based on training and experience, case agents know that frequent short trips, like the ones described above, are consistent with drug trafficking, more specifically, consistent with those engaged in picking up larger amounts of controlled substances to distribute.   Based on the aforementioned information, case agents believe MCDADE, and others, were travelling to Chicago, IL to procure large quantities of narcotics to transport back to WI in order to distribute them.   Case agents are also aware MCDADE uses multiple phones to either procure and/or distribute narcotics. Case agents have reviewed court authorized cellular phone location data from (414) 514-3794 and (414) 439-7468 and observed both phones consistently at the same locations in proximity while traveling.

**C.     Russell MCDADE's arrest on October 14, 2025 and incarceration.**

34.     On October 14, 2025, MPD executed a state search warrant at one of STAIR's properties, 1425 W Greenfield Avenue which was identified as a trap house used by MCDADE. MPD observed MCDADE arrive at 1425 W Greenfield Avenue property as a passenger in a Chevy Trailblazer, bearing Wisconsin license plate BBF3776 (Trailblazer) shortly before the execution of the warrant.   When MPD executed the warrant, MCDADE and others inside the trap house at 1425 W Greenfield Avenue property attempted to flee out of a window.   MPD arrested MCDADE and others during the execution of the search warrant and located on

MCDADE was $2,097; a smart flip phone blue Motorola razor with a brown case with stripes; and a black Apple iPhone in a black case.

35.     Inside 1425 W Greenfield Avenue, MPD located more than 140 grams of a substance that field tested positive for cocaine and 90 grams of a substance that field tested positive for fentanyl from a trash can near where MCDADE and others attempted to jump out the window. MPD also located: a Phoenix Arms Raven .25 caliber handgun, numerous ammunition; a gray Samsung touch screen cellphone with a black case; a gray Samsung touch screen cellphone with a black and pink case; digital scales; drug paraphernalia; suspected drug ledger, and items consistent with cooking crack cocaine. Also located inside 1425 W Greenfield Avenue was a camera surveillance system, including DVR systems.  The surveillance system located by MPD was consistent with the surveillance system described by a confidential source to case agents. MPD also located a document with MCDADE's name on it in a bedroom.  Law enforcement also found thousands of hypodermic needles and over a dozen nasal doses of Naloxone, which are used to counter the effects of an overdose. Based on training and experience, I believe that the items located at 1425 W Greenfield Avenue are consistent with the residence being used as a trap house. MCDADE was charged in Milwaukee County Case 2025CF4892 for drug related offenses and has remained in custody since his arrest.

36.     As set forth above, case agents used electronic and physical surveillance of MCDADE's cellular telephones showing MCDADE traveled to Chicago, IL numerous times late at night and in the early morning hours and returned directly

to Milwaukee after meeting at, or near, ERVING's residence at 6318 S. Aberdeen Drive, Chicago, IL, the **Subject Premises**. Since MCDADE has been incarcerated at the Milwaukee County House of Corrections, case agents have reviewed recorded jail calls with individuals identified as Victoria ALLEN, Allyse D. JONES, and others. Based on recorded jail calls, physical surveillance, and license plate reader technology, case agents determined that JONES and ALLEN began obtaining controlled substances or making payments for controlled substances on behalf of MCDADE from ERVING after MCDADE went into custody.

37.     For example, case agents received a toll record return for (612) 525-0135 and observed that on December 24, 2025, (612) 525-0135 made an outgoing call for two seconds at 10:14:07 am to telephone (773) 981-6881, ERVING's cell phone number. At 10:18:38 am telephone (773) 981-6881 (ERVING's cell phone) called JONES's telephone, (612) 525-0135, with a duration of 4 minutes 39 seconds. Based on the investigation into the MCDADE DTO, case agents believe that DTO members, including JONES, contact ERVING's cell phone number, (773) 981-6881, to arrange drug trafficking transactions on behalf of the MCDADE DTO while MCDADE is incarcerated.

38.     Case agents reviewed license plate reader activity regarding the license plate VK5729 on her Nissan Pathfinder being driven by JONES and observed that on December 29, 2025, the license plate was captured while driving through Fond Du Lac County at #12 Hwy 67 at Ashland Drive eastbound. The vehicle was captured at 12:19:17 pm and again at 12:30:08 pm. Based on the investigation into the DTO, cases

agents were aware the MCDADE has several drug customers in the Fond Du Lac area and believe that when JONES' vehicle was in the Fond Du Lac area on December 29, 2025 it was conducting drug deliveries on behalf of the MCDADE DTO. Based on training, experience, and the investigation into the MCDADE DTO, case agents further believe that the prior contacts on December 24, 2025 between ERVING's telephone (773) 981-6881 with JONES's telephone, (612) 525-0135 and then the travel of the same vehicle several days later is consistent with ERVING providing MCDADE's DTO (JONES or another individual associated with the MCDADE DTO) controlled substances and then MCDADE's DTO using JONES' vehicle to deliver controlled substances to MCDADE's customers in Fond Du Lac a few days later.

39. On December 31, 2025, at approximately 5:19 p.m., case agents conducted surveillance at 6408 North 73rd Street, Milwaukee, Wisconsin and observed Allyse JONES park a gray, 2014 Nissan Pathfinder, bearing Wisconsin license plate VK5729. Case agents were aware that JONES was in contact with MCDADE (in custody) and ERVING, as described in more detail below. Case agents reviewed WI DOT records which indicated the Nissan is registered to Virgil E. ERBY DOB: XX/XX/1966 of 3430 W. Wisconsin Ave #416, Milwaukee Wisconsin with a VIN of 55N1AR2MN0EC698011. Case agents observed JONES exit the Nissan and then enter her residence at 6408 N. 73rd Street. Case agents are aware that when MCDADE was not in custody, MCDADE would use vehicles registered to ERBY to distribute narcotics throughout Southeastern Wisconsin. Case agents are also aware

MCDADE would distribute the narcotics north of Milwaukee in Fond du Lac County, Wisconsin.

40. Case agents believe JONES is the user of (612) 525-0135 because: (1) In review of recorded jail calls with MCDADE and (612) 525-0135, MCDADE identifies the user of (612) 525-0135 as "A"; (2) A query of TLO, a law enforcement database revealed that (612) 525-0135 is affiliated with JONES; (3) During contact with the Racine (WI) Police Department on June 1, 2025 (Activity #25-024644), JONES provided her number as (612) 525-0135; and (4) Case agents have reviewed recorded video jail calls between MCDADE and (612) 525-0135 and identified the user of (612) 525-0135 during these recorded video jail calls as JONES, based on capering the user of (612) 525-0135 in the video against JONES' driver's license photograph. Case agents have reviewed jail communications between MCDADE and (612) 525-0135 recently as February 23, 2026, and believe that JONES is still the primary user of this phone.

41. Case agents have reviewed jails calls from MCDADE's PIN since MCDADE has been in custody at the Milwaukee County Jail. On November 12, 2025, at approximately 7:20 p.m., MCDADE called Shirtreal ROBY at (414) 252-8847 from the Milwaukee House of Correction (Jail call # 740505968_2025018513_11-122025_19-20-51_1-414-242-8847).

42. Case agents believe ROBY is the user of (414) 242-8847 because: (1) In review of recorded jail calls with MCDADE and telephone number (414) 242-8847, MCDADE identifies the user of (414) 242-8847 as "Shirtreal"; and (2) A query of TLO,

a law enforcement database revealed that (414) 242-8847 is affiliated with ROBY. Case agents have reviewed jail communications between Russell MCDADE and (414) 242-8847 as recently as February 2, 2026, and believe that ROBY is still the primary user of this phone.

43. During the record jail call, ROBY advised that she was going to text "them," but he said, "don't text my number to nobody and you don't give no number, my number, to nobody because you give it to him directly." MCDADE appeared to change the conversation and asked ROBY how her son was doing. ROBY explained how her son was suspended from school and kicked off the school bus. MCDADE asked for the number that he was trying to get, and ROBY told MCDADE the phone number was (773) 981-6881. As mentioned previously, this number is utilized by ERVING. MCDADE later told ROBY that he was going text Maria on the "tablet" the next day and ROBY said that Maria had called her and talked about some "green cards." Case agents became aware that (773) 981-6881 is used by one of MCDADE's sources of supply, identified as ERVING, who resides at the **Subject Premises**.

44. On November 21, 2025, at 8:21 a.m., MCDADE used a House of Corrections tablet to send a message to JONES at (612) 525-0135. MCDADE's PIN texted JONES, "Good morning bae waiting on the phones to come on I love u bae this cuz number, (773) 981-6881 (ERVING's telephone number) face time when I call". From previously recorded phone calls, case agents know JONES would not talk to ROBY directly and was looking for MCDADE's supplier's phone number, (773) 9816881 (ERVING's telephone number).

45. On January 9, 2026, at approximately 8:13 p.m., MCDADE called Victoria ALLEN at (262) 330-2333 from the Milwaukee House of Corrections (Jail call # 743521914 _2025018513_01-09-2026_20-13-47_1-262-330-2333).

46. Case agents believe ALLEN is the user of (262) 330-2333 because: (1) In review of recorded jail calls with MCDADE and telephone number (262) 330-2333, MCDADE identifies the user of (262) 330-2333 as "Victoria"; (2) A query of TLO, a law enforcement database revealed that (262) 330-2333 is affiliated with ALLEN; and (3) a query of CashApp revealed (262) 330-2333 is affiliated to "Victoria Allen." Case agents have reviewed jail communications between MCDADE and (262) 330-2333 as recently as February 9, 2026, and believe that ALLEN is still the primary user of this phone.

47. ALLEN stated, "I'm on my way to Chicago, he just told us to come on now." MCDADE told ALLEN to be safe. MCDADE then told ALLEN that he spoke to "Nephew" and told "Nephew" that he owed "Vicky" an apology. MCDADE then said that "J-Rock" was over at that lady "J-Lo" house and the "feds" ran in his house earlier and "Y'all gotta keep that nigga away from y'all." MCDADE later said that he "J-Rock" was running because he owed "Nephew" some money. MCDADE asked ALLEN if anybody had an extra phone near her and ALLEN could be heard in the background trying to get an additional phone. MCDADE asked if "old girl" gave her some money and ALLEN stated, "Yep, she gave me U/I three hundred." MCDADE asked if she ("old girl") was at the house and ALLEN replied she was not and was at "Greenfield." MCDADE then called her a "stupid ass."

48.     Based on the investigation to date, case agents believe MCDADE sent others including, but not limited to, ALLEN and JONES to Chicago, IL to obtain narcotics from MCDADE's source of supply.  As previously mentioned, case agents believed MCDADE's source of supply telephone number of (773) 981-6881, was and is currently being utilized by ERVING.  These individuals then transport the controlled substances to the greater Milwaukee area for further distribution.  Therefore, in this call, case agents believe ALLEN told MCDADE that she was on her way to Chicago to meet with MCDADE's source of supply to obtain narcotics because ERVING instructed ALLEN to drive there ("I'm on my way to Chicago, he just told us to come on now").

49.     Case agents conducted telephone toll analysis on ALLEN's telephone number, (262) 330-2333.  Case agents observed that, on January 9, 2026, ALLEN's telephone number, (262) 330-2333 was in contact with ERVING's telephone (773) 981-6881 18 times from approximately 4:23 p.m. through approximately 10:05 p.m.  Case agents conducted a query of the WIDOT and discovered that ALLEN is the registered owner of a black 2023 Chrysler Pacifica, bearing Wisconsin license plate AZW-6485, VIN: 2C4RC1BG5PR510973.  Therefore, case agents conducted a query of license plate readers in the Chicagoland area.  This query identified that on June 9, 2026, the Chrysler was traveling southbound on I-90 at W. Chicago Avenue in Chicago, IL at approximately 9:43 p.m.  Per the license plate readers, Allen's Chrysler Pacifica continued southbound and was ultimately observed southbound on I-90 at W. 59th Street at approximately 9:51 p.m., which was the southernmost license plate

reader that captured the Chrysler. Approximately 17 minutes later, at 10:08 p.m., the Chrysler was observed traveling northbound on I-90 at W. 59th Street. A query of the WIDOT revealed ERVING's address on his Illinois driver's license is listed as 6318 S. Aberdeen Street, Chicago, IL (**Subject Premises**), which is near the license plate reader at I-90 and W. 59th Street. As mentioned in the previous paragraph, the were 18 calls between ALLEN's number (262) 330-2333 and ERVING's telephone number (773) 981-6881 on January 9, 2026. Among these, some of the calls were as follows:

    a.    9:46 p.m.: (262) 330-2333 outgoing to (773) 981-6881;

    b.    9:52 p.m.: (262) 330-2333outgoing to (773) 981-6881;

    c.    10:02 p.m.: (262) 330-2333 incoming from (773) 981-6881; and

    d.    10:05 p.m.: (262) 330-2333 outgoing to (773) 981-6881.

50. Therefore, based on the recorded jail call during which ALLEN told MCDADE, "I'm on my way to Chicago, he just told us to come on now," as well as license plate reader for the Chrysler and telephone toll data between ALLEN's telephone (262) 330-2333 and ERVING's telephone (773) 981-6881, case agents believe ALLEN, driving the Chrysler, traveled to, or near, ERVING's residence to meet with ERVING and obtain narcotics, then traveled back northbound to the greater-Milwaukee area. In addition, case agents believe ALLEN used her phone, (262) 330-2333, to communicate with ERVING at (773) 981-6881 and coordinate this meeting.

51. On January 10, 2026, at approximately 9:54 a.m., MCDADE called ALLEN at (262) 330-2333 from the Milwaukee House of Corrections (Jail call # 7435301310 _2025018513_01-10-2026_09-54-46_1-262-330-2333). An unidentified male (UM) answered the phone and MCDADE asked if ALLEN was asleep. The UM advised that ALLEN was asleep and asked MCDADE if he should wake her up. MCDADE told UM to wake ALLEN up and then asked, "Y'all make it back safe?" The UM replied, "Yeah, yeah, [U/I] everything good." ALLEN then got on phone and said, "Hello." MCDADE laughed and suggested how tired ALLEN must be. MCDADE stated, "Yeah, that's good you all met him. You met him, huh? He cool?" ALLEN acknowledged, "Uh-huh." MCDADE said, "Yeah, he cool." As the call continued, MCDADE asked ALLEN if she found the "thingy" yet and ALLEN stated that she thought somebody put it in her closet and would look for it.

52. Based on this call, case agents believe the UM traveled to Chicago with ALLEN to meet with ERVING to obtain controlled substances the previous day. MCDADE asked the UM if the UM made it back from Chicago safely ("Y'all make it back safe?") and the UM confirmed they did ("Yeah, yeah, [U/I] everything good"). Furthermore, once ALLEN got on the phone, MCDADE confirmed that ALLEN and the UM met with ERVING ("Yeah, that's good you all met him. You met him, huh? He cool?") and ALLEN confirmed they had.

53. On January 18, 2026, at approximately 11:22 a.m., MCDADE called ALLEN at (262) 330-2333 from the Milwaukee House of Corrections (Jail call # 743939236 _2025018513_01-18-2026_11-22-10_1-262-330-2333). At approximately 9

minutes 52 seconds into the call, ALLEN asked MCDADE, "Who supposed to be goin' up north with Ra Ra?" MCDADE replied, "I don't know, shit. Who going?" ALLEN replied, "Not me." MCDADE stated, "You going to take that ride." MCDADE then stated, "Ask him, ask him who there." ALLEN was talking to somebody in background and ALLEN stated, "Uncle Junior." MCDADE replied, "Yeah, they can go." ALLEN told MCDADE, "They gotta take a phone." At 10 minutes 58 seconds MCDADE asked, "What time they leaving today? What time they leaving?" ALLEN asked, "Huh?" MCDADE repeated, "What time they leaving?" ALLEN advised, "I don't know, I gotta get them a phone first, cause they ain't finna use my shit." ALLEN then stated, "But then again, they can, 'cause I ain't gotta do nothing but sleep all while the going up there." ALLEN then yelled in background, "Y'all can take my phone U/I."

54. Based on the investigation thus far, case agents believe MCDADE has individuals transport narcotics to the Campbellsport area (Fond du Lac County), which is north of Milwaukee. Therefore, case agents believe MCDADE inquired as to who was going to transport the narcotics to Campbellsport ("Who supposed to be goin' up north with Ra Ra?"). ALLEN advised she was not going ("Not me") but eventually indicated that whoever does go can utilize her phone ("Y'all can take my phone U/I").

55. On January 21, 2026, at approximately 3:04 p.m., MCDADE called ALLEN at (262) 330-2333, from the Milwaukee House of Correction (Jail call # 744102904_2025018513_01-21-2026_15-04-25_1-262-330-2333). At about 9 minutes 8 seconds into the call, ALLEN said, "I gotta wait, cuz uh, this weekend I'mma send

"Brother-in-Law" to Chi-Town." MCDADE acknowledged. ALLEN continued, "Yeah, so I have to get him straight." MCDADE stated, "Ask Brother-in-Law and Uncle Junior, can they go up, go, go, go up that way [U/I] tomorrow or Friday." ALLEN asked, "Where?" MCDADE replied, "Up there where they went." ALLEN said they could not because she and "Brother-in-Law" were going to see Lola tomorrow.

56. As mentioned previously, case agents believe "Brother-in-Law" is HOWELL, and that "Chi-Town" is a nickname for Chicago, IL. Therefore, case agents believe ALLEN informed MCDADE that HOWELL would travel to Chicago that weekend to obtain narcotics from ERVING (this weekend I'ma send "Brother-in-Law" to Chi-Town"). MCDADE asked if HOWELL and "Uncle Junior" could travel to Campbellsport the next day or Friday to deliver narcotics to "Lisa" and/or obtained narcotics-related proceeds from her.

57. Case agents believe MCDADE continues to utilize other individuals to obtain and distribute narcotics for him to further his drug trafficking organization. These individuals are believed to obtain controlled substances from ERVING in the Chicagoland area and transport them back to the greater Milwaukee area for subsequent distribution. ALLEN utilized her telephone, (262) 330-2333, and ERVING utilized his telephone, (773) 981-6881, to conduct these transactions. In addition, on at least one occasion, ALLEN utilized her vehicle, a black 2023 Chrysler Pacifica bearing WI registration AZW-6485, VIN: 2C4RC1BG5PR510973, to travel to Chicago to meet with ERVING.

58.     On February 13, 2026, the Honorable William E. Duffin, United States Magistrate Judge, Eastern District of Wisconsin signed a warrant authorizing the electronic surveillance of ALLEN's telephone (262) 330-2333 and ERVING's telephone (773) 981-6881. These warrants were executed on that same date. Also on February 13, 2026, the Honorable William E. Duffin also signed a warrant authorizing law enforcement to install a GPS device on ALLEN's Chrysler.

59.     Case agents attempted to locate the Chrysler for several days to execute the GPS warrant, with negative results. On February 21, 2026, case agents discovered that ALLEN's Chrysler was re-possessed by the lien holder of the vehicle. In addition, case agents monitored location data pertaining to the location of telephone (262) 330-2333 and discovered that it had not traveled to Chicago, IL since agents began to receive said location data. Therefore, based on training, experience, and the investigation into this matter, because ALLEN no longer had the Chrysler, case agents believed ALLEN could not travel to Chicago, IL to meet with ERVING and it was likely MCDADE had someone else conducting drug transactions on his behalf.

60.     On February 22, 2026, case agents reviewed a jail video call from MCDADE to JONES using the "Home Wave" application that occurred on February 12, 2026. The time stamp on the screen of this video call was 05:48:10 p.m. During this call, it was apparent to case agents that JONES was driving in a vehicle. At the beginning of the call, MCDADE asked, "You read my e-mail?" JONES replied, "I can't because I was been driving." MCDADE also asked who JONES was with and she

replied that she was with her mother. Approximately 7 minutes and 17 seconds into the call, case agents observed a highway sign in the background of the video. Based on experience and observations, the sign appeared to be a Chicago-area Express Lane sign. Case agents know that JONES is one of multiple people who MCDADE uses to conduct narcotics pickups from his source(s) in Chicago, believed to be ERVING. Case agents also know that JONES is known to drive Nissan Pathfinder based on prior surveillance.

61. Case agents reviewed electronic surveillance footage from the area identified by case agents as ERVING's residence, 6318 S. Aberdeen Street, Chicago, Illinois, the **Subject Premises**, from February 12, 2026. At approximately 6:16 p.m., case agents observed what appeared to be a gray Nissan Pathfinder SUV (noted above), stop in front of ERVING's residence. A black female with her hair in a short ponytail exited the passenger side of the vehicle, which was consistent with the previously documented Nissan and walked toward ERVING's residence, out of the view of surveillance. The SUV, consistent with the previously documented Nissan, then departed the area northbound, away from ERVING's residence. Case agents believe the individual who exited the Nissan Pathfinder was consistent with JONES.

62. At approximately 7:15:57 p.m., electronic surveillance revealed that a dark sedan stopped in front of ERVING's residence at which time its hazard lights were activated. At approximately 7:16:26 p.m., the same female, who was consistent with JONES, appeared from ERVING's residence and entered the rear passenger side of the awaiting vehicle. This vehicle drove northbound away from the residence.

Case agents believe that this was a rideshare vehicle (i.e. Uber or Lyft) and that JONES had left in it.

63. Case agents also checked license plate readers for the Nissan Pathfinder for February 12, 2026. This query revealed that the Nissan was captured on a highway camera on February 12, 2026, at approximately 3:14 p.m., travelling southbound on I-94 near Lake Forest, Illinois. At approximately 4:06 p.m., the Nissan was also captured on a highway camera traveling southbound on I-90/I-94 at W. Chicago Avenue. This travel was in the direction of ERVING's residence, the **Subject Premises**.

64. Based on JONES' statement to MCDADE on the recorded video all, using (612) 525-0135, which indicted JONES was driving, case agents' observation that JONES appeared to pass a sign on I-94 in Illinois while she was driving, electronic surveillance, and traffic cameras showing the Nissan in Chicago, case agents believe JONES traveled to Chicago in the Nissan. In addition, case agents believe JONES was dropped off at ERVING's residence to obtain narcotics on behalf of the MCDADE DTO. JONES' travel is consistent with known previous travels of other suspects in this investigation that are suspected of having traveled to ERVING's residence to obtain narcotics.

65. Case agents conducted telephone toll analysis and observed that JONES did not appear to contact ERVING on February 12, 2026, using (612) 525-0135. Therefore, case agents believe based on training and experience, that ERVING and JONES made contact with each other utilizing non-conventional methods such as

FaceTime, iMessage, or other encrypted applications, none of which would appear on telephone tolls. Case agents are aware that those engaged in drug trafficking will often use non-conventional methods such as FaceTime, iMessage, or other encrypted applications, because drug traffickers believe they can evade law enforcement when using these communication methods.

**D.     Execution of Search Warrant of Subject Premises**

66.     On April 21, 2026, Magistrate Judge Daniel P. McLaughlin authorized a search warrant for the **Subject Premises**, allowing law enforcement to search for records related to violations of 21 U.S.C. § 841(a)(1) and 846. The search warrant authorized law enforcement to search for, among other things, financial records, lists of drug customers and transactions, information related to sources of drugs, and electronic devices like cellular phones.

67.     On Wednesday April 22, 2026, members of Homeland Security and Illinois State Police executed a court authorized search warrant at 6:03 am at 6318 S Aberdeen Street, Chicago Illinois. A search of the residence recovered the following:

a. In the kitchen, in the freezer door, two plastic baggies containing a purple rock like substance suspected to be Fentanyl.

b. Plastic baggies containing black mini-gem bags with a Batman logo on it.

c. In the top shelf freezer door, a plastic vacuum sealed bag containing a brown substance suspected to be broken off a kilogram of suspected heroin with partial emblem on.

d.  On the third shelf of freezer, a plastic freezer bag containing a light brown powder substance suspected to be heroin.

e.  In a kitchen cabinet, a plastic baggy box containing a digital scale with white residue and three Ziplock baggies containing purple gem bags.

f.  In a bedroom, a Nike shoe box containing a Black Intratec 9mm semi auto handgun with extended magazine, serial #A041253 and a digital money counter.

g.  In the front closet of the living room, a black Ruger 9mm semi-auto handgun serial # 45444029.

## II.  CONCLUSION

68.  Based on the above information, I respectfully submit that there is probable cause to believe that ERVING was engaged in drug trafficking offenses with the MCDADE DTO, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

69.  I, therefore, respectfully request that this Court issue a criminal complaint charging ERVING with violations of Title 21, United States Code, Sections 846 and 841(a)(1).